

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **BRENT WOOLEY, on behalf of himself** ) <br> **and all others similarly situated,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **JACKSON HEWITT, INC., a wholly** ) <br> **owned subsidiary of Jackson Hewitt** ) <br> **Tax Services, Inc.; FARRUKH SOHAIL;** ) <br> **SMART TAX, INC. d/b/a Jackson** ) <br> **Hewitt Tax Service; ASK TAX, INC.** ) <br> **d/b/a Jackson Hewitt Tax Service; and** ) <br> **CERTAIN UNKNOWN JACKSON** ) <br> **HEWITT FRANCHISEES #1-100,** ) <br> ) <br> **Defendants.** ) | **No. 07 C 2201** <br><br> **Judge Ruben Castillo** |

## MEMORANDUM OPINION AND ORDER

Brent Wooley ("Plaintiff") brings this purported class action against Jackson Hewitt, Inc.

("Jackson Hewitt"), Farrukh Sohail ("Sohail"), Smart Tax, Inc. ("Smart Tax"), Ask Tax, Inc.

("Ask Tax") and unknown Jackson Hewitt Franchisees ("Franchisees") (collectively "the

Defendants") alleging fraud in connection with Defendants' tax preparation services. Plaintiff

alleges a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1961 *et seq.*, and state law claims for consumer fraud, breach of contract, and unjust

enrichment. (R. 37, Second Amended Complaint ("SAC").) Presently before the Court are

motions to dismiss filed by Jackson Hewitt (R. 49); Sohail and Smart Tax (R. 51); and Ask Tax

(R. 59). For the following reasons, the motions are granted in part and denied in part.

Jackson Hewitt is the second largest income tax preparation company in the United States. (R. 37, SAC ¶ 5.) Jackson Hewitt operates its business with a combination of both Jackson Hewitt-owned offices and franchised offices, all of which bear the logo "Jackson Hewitt." (*Id.*) The franchised offices are operated pursuant to a Jackson Hewitt Franchise Agreement and operating manual, under which Jackson Hewitt supervises, directs, and controls all office operations. (*Id.*) There are 6,051 company-owned and franchised Jackson Hewitt offices in the United States. (*Id.*)

Sohail is the owner of more than 125 Jackson Hewitt franchise stores in various cities, including Chicago, Illinois; Atlanta, Georgia; Birmingham, Alabama; Detroit, Michigan; and Raleigh, North Carolina. (*Id.* ¶ 6.) Sohail and his wife are the owners and sole shareholders of Smart Tax, which operates at least 27 Jackson Hewitt franchise stores in the Chicago area. (*Id.* ¶ 7.) Sohail also "directly owns or controls" Ask Tax, which operates eight Jackson Hewitt franchise stores in the Chicago area. (*Id.* ¶ 8.) Sohail's stores prepared over 105,000 federal income tax returns in 2006. (*Id.* ¶ 6)

Plaintiff, who is employed by the United States Postal Service, engaged Jackson Hewitt to prepare his tax return for tax year 2002-2003. (*Id.* ¶ 4.) Plaintiff went to one of the Chicago

---

[1] These facts are taken from the SAC. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007). Although the Court is generally limited to the allegations in the complaint, the Court can also consider public records and other documents subject to judicial notice, and any uncontested documents attached to the complaint. Fed. R. Civ. P. 10(c); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

area Jackson Hewitt stores, which he believes Sohail owned. (*Id.* ¶ 17.) Plaintiff's return was prepared by Jackson Hewitt employee Toya Neal ("Neal"). (*Id.* ¶ 4.) According to Plaintiff, Neal included false charitable and other deductions on his tax return which he did not authorize. (*Id.*) Plaintiff alleges that he nonetheless "signed his return and filed it in the form prepared by Jackson Hewitt, relying on Jackson Hewitt's purported competency and accuracy." (*Id.* ¶ 21.) Plaintiff's tax return was subsequently audited by the Internal Revenue Service ("IRS"), which disallowed the deductions and charged Plaintiff taxes, penalties, and interest. (*Id.* ¶ 22.)

After paying these charges, Plaintiff sought reimbursement from Jackson Hewitt. (*Id.*) As a guarantee of its competence, Jackson Hewitt provides both a "Basic Guarantee" and a "Gold Guarantee." (*Id.* ¶ 12.) The Basic Guarantee, which is included in the cost of the tax preparation service, provides that "if Jackson Hewitt makes an error in your tax preparation, although Jackson Hewitt does not pay any additional tax assessed, Jackson Hewitt will reimburse you for any penalty or interest, which you must pay on such tax." (*Id.* ¶ 13.) The Gold Guarantee, offered for an additional $30, provides additional protection to taxpayers. (*Id.* ¶ 14.) Plaintiff purchased the Gold Guarantee at the time Neal prepared his taxes. (*Id.* ¶ 16.) The Gold Guarantee provides:

> If the additional service is purchased at the time your tax return is prepared, Jackson Hewitt guarantees that in the event you must pay additional tax over and above what your tax return shows as a result of an error by Jackson Hewitt in the preparation of your individual tax return, you will be reimbursed for such additional tax up to a cumulative total of $5,000 for all tax returns covered hereunder. . . . Reimbursement under this Gold Guarantee is over and above the Basic Guarantee of reimbursement for penalty and interest."

(*Id.* ¶ 14.) The Gold Guarantee does not apply in certain situations, including where: the

taxpayer provided incorrect or incomplete information to Jackson Hewitt; the taxpayer intended to defraud Jackson Hewitt or the IRS; or the taxpayer is "unable to produce sufficient or appropriate records to support [his or her] tax position before the government." (*Id.* ¶ 15 & Ex. 1, Agreement.)

In February 2005, Jackson Hewitt denied Plaintiff's request for reimbursement under the Gold Guarantee. (*Id.* ¶ 23.) According to the letter Plaintiff received, Jackson Hewitt determined that Plaintiff's damages were not covered under the Gold Guarantee for the following reason: "Our investigation indicates that you were unable to produce sufficient or appropriate records to support your tax position before the government regarding deductions claimed on your return." (*Id.* ¶ 23 & Ex. 2, Letter.)

Plaintiff alleges that Neal prepared tax returns for two other postal workers in 2002-03 and included false deductions in their returns as well. (*Id.* ¶ 24 & Ex. 3, Statements.) These deductions were also disallowed by the IRS, and Plaintiff alleges that Jackson Hewitt similarly refused to honor its guarantees to pay the taxes, interest, and penalties charged to these individuals. (*Id.* ¶ 24.) Plaintiff further alleges that there are numerous other taxpayers who were induced to file returns in reliance on Jackson Hewitt's competency and accuracy, and "to pay extra for the Gold Guarantee on returns whose items defendants knew would not stand up to an audit and for which no guarantee would be paid either." (*Id.* ¶¶ 25-26.)

In April 2007, the United States government filed a complaint seeking permanent injunctive relief against Smart Tax, Sohail, and other individual defendants, alleging that they

engaged in "a pervasive and massive series of tax-fraud schemes."[2] (*United States v. Smart Tax of Georgia, Inc.*, No. 07-747 (N.D. Ga. filed Apr. 2, 2007), Compl. ¶ 1.) The government alleged that, among other actions, Sohail and his companies failed to teach income tax preparers critical elements related to tax return preparation, procedures for detecting fraudulent documents, or methods to question customers who provide questionable, suspicious, or fraudulent information. (*Id.*, Compl.) According to the government, "[t]his lack of training directly contributes to the preparation of inaccurate, incomplete, and false tax returns." (*Id.* ¶ 11.) In October 2007, a consent judgment was entered permanently enjoining Sohail from acting as a federal income tax return preparer or otherwise preparing tax returns for anyone other than himself, his wife, or any corporations he owns. (*Id.*, Consent Judgment.)

Also in April 2007, the United States government filed an action in the Northern District of Illinois raising similar allegations against Sohail and the employees at his Jackson Hewitt franchises in the Chicago area. (*United States v. Smart Tax, Inc.*, No. 07-1802 (N.D. Ill. filed Apr. 2, 2007), Compl.) Following the entry of the consent judgment in the Georgia case, the parties in the Illinois case, presided over by District Judge Blanche Manning, entered a stipulation of dismissal against Sohail; Judge Manning also entered a consent judgment against Smart Tax and Ask Tax permanently enjoining them from acting as federal income tax return preparers. (*Id.*, R. 26, Consent Judgment.)

---

[2] The Court takes judicial notice of the publicly filed documents in *United States v. Smart Tax of Georgia, Inc., et al.*, No. 07-747 (N.D. Ga. filed Apr. 2, 2007) and *United States v. Smart Tax, Inc.*, No. 07-1802 (N.D. Ill. filed Apr. 2, 2007). *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Evid. 201.

As a result of the consent judgments entered in the two government cases, Jackson Hewitt has agreed to buy back Sohail's franchises and will pay $19 million for some of the more than 150 franchises Sohail owns throughout the country. (R. 37, SAC ¶ 30.)

## PROCEDURAL HISTORY

In April 2007, Plaintiff filed this suit challenging Jackson Hewitt's alleged practice of "creating fraudulent customer returns without authorization, input, or evidence provided by the customer," coupled with its failure to honor its guarantees "when Jackson-Hewitt-created items are challenged and disallowed by the IRS." (R. 37, SAC ¶ 1.) In the SAC, Plaintiff alleges the following claims: in Count I, a claim under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et. seq.* ("ICFA"); in Count II, a claim under RICO; in Count III, a state law claim for unjust enrichment; and in Count IV, a state law claim for breach of contract. Jurisdiction is premised on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

The Defendants move to dismiss the SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 49, 51, 59.)

## LEGAL STANDARDS

When deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007). Detailed factual allegations are not necessary to adequately state a claim, but merely reciting the elements of a cause of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Ericson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Dismissal is appropriate "only if the complaint fails to set forth enough facts to state a claim to relief that is plausible on its

6

face." *Segal v. Geisha NYC, LLC*, ---F.3d---, 2008 WL 465882, at *2 (7th Cir. Feb. 22, 2008). In other words, to survive a motion to dismiss "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief." *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007).

## ANALYSIS

Defendants move to dismiss the SAC on various grounds. (R. 49, Def. Jackson Hewitt's Mot. to Dismiss; R. 51, Defs. Sohail's and Smart Tax's Mot. to Dismiss; R. 59, Def. Ask Tax's Mot. to Dismiss.) Jackson Hewitt argues that dismissal is appropriate for the following reasons: (1) Plaintiff fails to state a claim under the ICFA and has not complied with Rule 9(b) pleading requirements with respect to the ICFA claim; (2) Plaintiff's RICO claim fails because Plaintiff has not alleged, and cannot allege, the existence of a RICO "enterprise" or that Jackson Hewitt participated in the operation or management of the purported enterprise; and Plaintiff has filed to comply with Rule 9(b) pleading requirements with respect to the "pattern" element of the RICO claim; (3) the ICFA and RICO claims are time-barred; (4) Plaintiff fails to state a claim for unjust enrichment because his claims are premised on the alleged breach of contractual duties; and (5) Plaintiff fails to state a claim for breach of contract because the documentation exception to the Gold Guarantee, which excludes payment if the taxpayer does not have documentation to support his tax position, is unambiguous and precludes Plaintiff's claim. (R. 50, Jackson Hewitt's Mem. of Law in Supp. of Mot. to Dismiss.)

Sohail, Smart Tax, and Ask Tax join in Jackson Hewitt's arguments, and raise the additional argument that Plaintiff cannot state any claims against Sohail because he was "merely a silent minority shareholder" of the Jackson Hewitt franchises and did not have any personal

involvement in the alleged fraud. (R. 52, Sohail's & Smart Tax's Mem. of Law in Supp. of Mot. to Dismiss; R. 59, Ask Tax's Mem. In Supp. of Mot. to Dismiss.) The Court addresses each argument in turn.

## A.    The ICFA Claim

In Count I, Plaintiff alleges that Defendants violated the ICFA by falsifying customer tax returns and then failing to honor its obligation to reimburse customers under the Basic and Gold Guarantees. (R. 37, SAC ¶¶ 39-45.) Plaintiff alleges that as a result of Defendants' acts, he and other class members have suffered pecuniary damages, including being forced to pay taxes, interest, and penalties at their own expense. (*Id.* ¶ 45.)

The ICFA prohibits unfair or deceptive acts or practices, and provides a cause of action for any person who suffers actual damages as a result of a violation. 815 ILCS 505/10a(a). "Illinois courts have repeatedly stressed the 'broad protective philosophy' of this legislation," which was intended to provide more protection to consumers than common law fraud doctrines. *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997). To state a claim under the ICFA, the plaintiff must allege: a deceptive act or practice by the defendant; the defendant's intent that the plaintiff rely on the deception; that the deception occurred in a course of conduct involving trade and commerce; and actual damages proximately caused by the deception. *Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

Jackson Hewitt argues that Plaintiff's ICFA claim fails as a matter of law because "a plaintiff cannot state a claim under the ICFA by alleging that a business did not perform the services that it had promised in its agreement with the customer." (R. 50, Jackson Hewitt's Mem. in Supp. of Mot. to Dismiss at 4.) In other words, Plaintiff cannot "transform" what is in

8

essence a claim for breach of contract into a fraud claim under the ICFA. (*Id.*)

In *Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005), the Illinois Supreme court rejected efforts by the plaintiff to enforce certain contractual promises through the ICFA. The Court held that "[a] breach of a promise, without more, is not actionable under the Consumer Fraud Act." *Id.* at 844. The Court explained:

> What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.

*Id.* (citation omitted). Accordingly, the Court held that the plaintiff could not maintain a consumer fraud claim based on an assertion that the defendant breached a promise contained in an insurance policy to restore plaintiff's vehicle to its pre-loss condition. *Id.* Similarly, the plaintiff could not rest his claim on the defendant's alleged failure to repair vehicles using parts "of like kind and quality," which was based on language contained in the policy. *Id.*

Thus, based on *Avery*, a plaintiff cannot raise a claim under the ICFA that "seeks to enforce an unfulfilled contractual promise." *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006). "This is merely a breach of contract [claim] clothed as a violation of the Consumer Fraud Act." *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196-97 (Ill. App. Ct. 2005) (challenge to delay in refunding mortgage escrow could not be brought as consumer fraud action because claim was based on an allegation that defendant failed to fulfill its contractual obligations); *see also Zankle v. Queen Anne Landscaping, Inc.*, 724 N.E.2d 988, 992-

93 (Ill. App. Ct. 2000) (allegations that landscapers failed to perform work properly were actionable only as breach of contract claim, not ICFA claim).

Here, Plaintiff alleges that Defendants violated the ICFA by engaging in the following deceptive and unfair practices:

> (a) misrepresenting to the customers that Defendants would accurately prepare customer tax returns with the documentation provided by the customer;
>
> (b) misrepresenting to the customer that the Basic and Gold Guarantees would provide added protection if an error is made on the customer's tax return; [and]
>
> (c) selling and charging extra consideration for the Gold Guarantee, claiming that it will be honored for additional taxes and penalties on items which were included in the return but knowing the taxes and penalties will not be covered where the customer is unable to produce sufficient or appropriate records to support its tax position before the government, when information is included on the tax return, as prepared by Jackson Hewitt tax preparers, that is not supported by any records.

R. 37, SAC ¶ 43. Even though Plaintiff couches the allegations in terms of misrepresentations, it is apparent that allegation (a) is premised on Defendants' alleged failure to accurately prepare taxpayers' returns in accordance with their tax preparation agreement. Similarly, allegations (b) and (c) are premised on Defendants' alleged failure to fulfill their obligation to reimburse taxpayers under the Basic and Gold Guarantees when returns contained Jackson Hewitt-created deductions. These are breach of contract claims that as a matter of law cannot be brought under the ICFA. *Shaw*, 461 F.3d at 902-03; *Avery*, 835 N.E.2d at 844. "[T]he deceptive act or practice which is actionable under the Consumer Fraud Act involves more than the mere fact that a defendant promised something and then failed to do it, since that type of 'misrepresentation'

occurs every time a defendant breaches a contract." *Kindernay v. Hillsboro Area Hosp.*, 851 N.E.2d 866, 880 (Ill. App. Ct. 2006).

In his opposition to the motion to dismiss, Plaintiff fails to address *Avery* or its progeny, instead arguing that he has properly stated a claim under the ICFA because the "Gold Guarantee product was 'unconscionable.'" (R. 64, Pl.'s Combined Resp. at 8.) As Jackson Hewitt points out, the SAC is devoid of any allegations that the Gold Guarantee is "unconscionable." (R. 66, Jackson Hewitt's Reply at 3 & n. 1.) Plaintiff cannot amend his complaint by raising new claims in response to the motion to dismiss. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."); *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1091 n.8 (N.D. Ill. 2005) (declining to consider new claims contained in response to motion to dismiss).

Even assuming Plaintiff had properly raised a claim based on unconscionability, he has not cited any case law holding that *Avery* is inapplicable when a contract is alleged to be unconscionable. Plaintiff's citation to *Anthony v. Country Life Mfg. LLC*, No. 02-1601, 2002 WL 31269621, at *2 (N.D. Ill. Oct. 9, 2002), is unavailing; although the District Court observed that the ICFA was intended to protect consumers from the imposition of unconscionable contract terms, among other practices, this case was decided before *Avery*. *Id.* Further, there was no analysis of the unconscionability issue in *Anthony* because that case involved the marketing of adulterated food, not an unconscionable contract term. *Id.* at *2-3.

Because Plaintiff cannot transform what is in essence a breach of contract claim into a fraud claim under the ICFA, Plaintiff's ICFA claim is dismissed. As this claim has been

11

dismissed, the Court does not reach Defendants' alternative arguments for dismissal of this claim.

## B.   The RICO Claim

In Count II, Plaintiff alleges that Jackson Hewitt and its franchises violated RICO by engaging in a pattern of racketeering activity involving the wire transmission of thousands of fraudulently prepared tax returns and the processing of credit card charges for the Gold Guarantee. (R. 37, SAC ¶ 46-59.)

Congress passed RICO in an effort to combat organized, long-term criminal activity. *Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). To that end, RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Although RICO is a criminal statute, it provides a private right of action to "[a]ny person injured in his business or property by reason of a violation." 18 U.S.C. § 1964(c); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). Despite this private right of action, RICO was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings*, 495 F.3d at 472.

In order to state a claim under § 1962(c), a plaintiff must adequately allege each of the following elements: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Jennings*, 495 F.3d at 472; *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). A RICO plaintiff is required to allege sufficient facts to support each element, and cannot

12

simply allege these elements using boilerplate language. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *Goren*, 156 F.3d at 727; *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 768 (N.D. Ill. 2005).

## 1. Enterprise

Jackson Hewitt first argues that Plaintiff has failed to allege the existence of a RICO enterprise. (R. 50, Jackson Hewitt's Mem. in Supp. of Mot. to Dismiss at 8-10.) An "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise can be formal or informal, but there must be some type of "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). In other words, the enterprise "must be more than a group of people who get together to commit a pattern of racketeering activity," and more than "a group of associated businesses that are operated in concert under the control of one family." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995). Rather, there must be an organization with a structure and goals separate from the predicate acts themselves. *Stachon*, 229 F.3d at 675.

In the SAC, Plaintiff defines the RICO enterprise as follows: "Jackson Hewitt, considered and operating together with its franchisees constitute an 'enterprise' as defined by 18 U.S.C. § 1961(4), operating nationwide under the Jackson Hewitt service mark without identifying them each as separate entities." (R. 37, SAC ¶ 49.) Stripped of the verbiage, Plaintiff alleges that Jackson Hewitt and its franchises, acting together, constitute the enterprise. Jackson Hewitt

13

argues that, under Seventh Circuit precedent, Plaintiff cannot maintain a RICO claim against a franchiser and its franchisees in this situation, which is "absurdly remote" from the intended purpose of RICO. (R. 50, Jackson Hewitt's Mem. in Supp. of Mot. to Dismiss at 9.) The Court agrees with Jackson Hewitt.

In *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226-28 (7th Cir. 1997), the plaintiff brought a RICO claim against Chrysler Corporation alleging warranty fraud. The RICO enterprise was alleged to be "a 'Chrysler family' consisting of subsidiaries of the Chrysler corporation engaged in various facets of production, financing, and marketing of Chrysler automobiles to the investing public." *Id.* at 226. In determining whether the plaintiff adequately alleged the existence of a RICO enterprise, the Seventh Circuit considered the type of conduct meant to be targeted by the RICO statute. *Id.* In the Court's view, a "prototypical" RICO case is "one in which a person bent on criminal activity seizes control of a previously legitimate firm" and uses the firm's resources to perpetrate more extensive, and less discernable, criminal acts than he could do on his own. *Id.* at 277. One step beyond the prototypical case, and still actionable under the statute, is where a criminal "uses the acquired enterprise to engage in some criminal activities but for the most part is content to allow it to continue to conduct its normal, lawful business." *Id.*

Another step beyond that—the situation alleged by the plaintiff in *Fitzgerald*—is where "the criminal seizes control of a subsidiary of a corporation and perverts the subsidiary into a criminal enterprise that manages in turn to wrest sufficient control or influence over the parent corporation to use it to commit criminal acts." *Id.* The Court found this scenario too far removed from the purpose of RICO: "What we cannot imagine, and what we do not find any

14

support for in appellate case law, is applying RICO to a free-standing corporation such as Chrysler merely because Chrysler does business through agents, as virtually every manufacturer does." *Id.* The Court held that the "draconian penalties" available under RICO are not triggered in an ordinary case of conspiracy between a corporation and its subsidiaries or employees, and that Chrysler and the members of its "corporate family" did not constitute a RICO enterprise:

> 'Enterprise' connotes more. Just how much more is uncertain. But it is enough to decide this case that where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute.

*Id.* Based on *Fitzgerald*, Jackson Hewitt and the members of its "corporate family" cannot constitute a RICO enterprise in the scenario alleged by Plaintiff. *Id.*; *see also Stachon*, 229 F.3d at 676 n. 3 (plaintiff cannot establish a RICO enterprise by naming corporation's franchises in addition to the corporation); *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself."); *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998) (plaintiff cannot establish enterprise "merely by showing that the pattern of predicate acts. . . were committed by a firm that has agents or affiliates. . . . The firm must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality.").

Even assuming Jackson Hewitt and its franchises constituted a RICO enterprise, the SAC contains other deficiencies. Except for a very general allegation that the franchises are governed by franchise agreements, the SAC fails to describe the organization and hierarchy of the alleged enterprise, the manner of decision-making the enterprise employed, and the differentiation of roles for the actors and groups within the supposed enterprise. (*See* R. 37, SAC ¶ 5, 50.) Nothing in the SAC indicates the existence of a "command structure" separate and distinct from the Defendants themselves. *Stachon*, 229 F.3d at 676. Although Plaintiff describes the work of the alleged enterprise—providing tax preparation services—a RICO plaintiff cannot establish structure merely by defining the enterprise through what it does. *Id.* ("[T]he mere fact that a [a franchiser] . . . had business dealings with a wide assortment of unnamed manufacturers, wholesalers, and members in no way establishes that they function with [the franchiser] as a continuing unit or an ongoing structured organization."). The SAC also lacks an explanation of how the alleged enterprise was driven by a common goal or purpose to engage in a course of conduct. *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (common purpose is "essential ingredient" of any association-in-fact enterprise). For all of these reasons, Plaintiff has failed to adequately allege the existence of a RICO enterprise.

## 2. Person/Conduct

Even assuming Plaintiff adequately alleged the existence of a RICO enterprise, he must satisfy the "conduct" element: that a "'person' associated with the enterprise conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 646 (7th Cir. 1995) (internal quote marks and citations omitted). A RICO "person" includes "any individual or entity

16

capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A RICO

plaintiff must allege and prove the existence of two distinct entities: "(1) a 'person'; and (2) an

'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric*

*Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). This distinctiveness requirement

stems from the RICO statute itself: "Whether the Act seeks to prevent a person from victimizing,

say, a small business . . . or to prevent a person from using a corporation for criminal purposes . .

. the person and the victim, or the person and the tool, are different entities, not the same." *Id.* at

162.

In the SAC, Plaintiff alleges: "Defendant Jackson Hewitt and the other defendants

(including Unknown Franchisees) are each a 'person' within the meaning of 18 U.S.C. §

1961(3)." (R. 37, SAC ¶ 48.) However, because Jackson Hewitt and its franchises are alleged to

be the RICO enterprise, Jackson Hewitt cannot also be the RICO "person." *King*, 533 U.S. at

161. Plaintiff acknowledges as much in his response brief, disavowing any claim that Jackson

Hewitt is the RICO person in this case. (R. 64, Pl.'s Combined Resp. at 13-14.) Instead, he

states that "the RICO persons in this case are the RICO Defendants listed above [Sohail, Ask

17

Tax, and Smart Tax], not Jackson Hewitt."[3] (*Id.* at 13.)

Nevertheless, Plaintiff tries to salvage his RICO claim against Jackson Hewitt by arguing that, even though Jackson Hewitt cannot be the RICO person, the company "is also liable because it knew of and directly benefitted from Mr. Sohail's RICO violations." (R. 64, Pl.'s Combined Resp. at 17.) In other words, Plaintiff is attempting to hold Jackson Hewitt liable under an "aider and abettor" theory. (*Id.*) As Jackson Hewitt points out, however, there are no allegations in the SAC that would support an aiding and abetting claim against Jackson Hewitt; as stated above, the SAC clearly sought to hold Jackson Hewitt liable for direct violations of RICO. (R. 37, SAC ¶ 48.) Again, Plaintiff cannot amend his SAC with new claims raised in response to the motion to dismiss. *Thomason*, 888 F.2d at 1205; *Berg*, 372 F. Supp. 2d at 1091.

Even assuming Plaintiff properly raised an aiding and abetting claim, the Seventh Circuit has never determined whether the civil RICO statute provides for aider and abettor liability. *See Am. Auto. Access., Inc. v. Fishman*, 175 F.3d 534, 543 (7th Cir. 1999) ("This court has not yet determined whether aiding and abetting liability applies in civil RICO actions. . . ."). Numerous district courts in this Circuit have rejected such claims, reasoning that the absence of the words

---

[3] The precise contours of Plaintiff's RICO claim appear to be a moving target. As stated above, in the SAC Plaintiff clearly alleged that each of the Defendants constituted a "person" for purposes of RICO; in other words, he sought to hold each Defendant liable for violating RICO. In his response brief, he disavows any claim that Jackson Hewitt constitutes a person for RICO purposes, accusing Jackson Hewitt of "confusing the allegations of the SAC." (R. 64, Pl.'s Combined Resp. at 13.) Now Plaintiff asserts that the "persons" he is seeking to hold directly liable for RICO violations are Sohail, Ask Tax, and Smart Tax. (*Id.* at 13-14.) He thereafter confusingly makes reference solely to Sohail as the RICO person, while in other instances refers generally to the "RICO Defendants" without identifying which Defendants he is referring to. (*Id.* at 14-18.) In this instance, the Court will assume the confusion is due to poor drafting rather than gamesmanship on the part of Plaintiff. Nevertheless, Plaintiff must take care to use precision when drafting future court documents in this case, or risk being sanctioned for making frivolous arguments or creating unnecessary work for either the Court or the Defendants.

"aid" or "abet" in the statute indicates a congressional intent not to provide for aiding and abetting liability in civil RICO cases. *See, e.g., Cobbs v. Sheahan*, 385 F. Supp. 2d 731, 739 (N.D. Ill. 2005); *Touhy v. Northern Trust Bank*, No. 98-6302, 1999 WL 342700, at *2-4 (N.D. Ill. May 17, 1999); *Sorrano v. New York Life Ins. Co.*, No. 96-7882, 1999 WL 104403, at *7-8 (N.D. Ill. Feb. 24, 1999). These courts have analogized from the securities fraud context, in which the Supreme Court has held that there is no aiding and abetting liability under Section 10(b) of the Securities Exchange Act because the statute does not specifically provide for such liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994). In reaching this conclusion, the Supreme Court observed, "Congress knew how to impose aiding and abetting liability when it chose to do so." *Id.* at 176.

Plaintiff cites to the one district court case from this Circuit allowing a civil RICO claim to proceed based on an aiding and abetting theory. *See Am. Auto. Access., Inc. v. Fishman*, No. 95-5156, 1996 WL 480369 (N.D. Ill. Aug. 22, 1996), *aff'd on other grounds by Fishman*, 175 F.3d at 543-44. The District Court in *Fishman* reasoned that aiding and abetting liability was permissible under RICO because Section 1962(c) prohibits a defendant from "directly or indirectly" participating in illegal activity. *Id.* at *6. However, subsequent cases have criticized the analysis in *Fishman* as "thin" and "difficult to square with *Central Bank*, which expressly rejected the notion that the language 'directly or indirectly' established aiding and abetting liability." *Cobbs*, 385 F. Supp. 2d at 739; *see also Touhy*, 1999 WL 342700, at *3 (rejecting analysis in *Fishman*). This Court finds more persuasive the analysis of the courts that have declined to recognize aider and abettor liability, and adopts the holding of these courts. Accordingly, the RICO claim against Jackson Hewitt is dismissed.

19

This leaves Plaintiff's claim that Sohail, Ask Tax, and Smart Tax are the RICO "persons" sought to be held liable. (R. 37, SAC ¶ 48.) A corporate owner or employee is considered distinct from the corporation itself, and thus, a corporate owner or employee "who conducts the affairs of the corporation through illegal acts comes within the terms of the statute. . . ." *King*, 533 U.S. at 162. Sohail, who is alleged to be the owner and controlling shareholder of the various franchises, is distinct from Jackson Hewitt, and thus as a general matter could satisfy the definition of a RICO "person." *Id.*; *see also United States v. Robinson*, 8 F.3d 398, 407 (7th Cir. 1993) (president and controlling shareholder of corporation-enterprise was separate and distinct from enterprise); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir. 1989) (owners of corporation were sufficiently distinct from corporation for RICO purposes).

However, in order for Sohail to be held liable as a RICO "person," he must have conducted or participated in the alleged enterprise's affairs, and must have had some part in directing those affairs. *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "In other words, []he must have participated in the operation or the management of the enterprise itself, and []he must have asserted some control over the enterprise." *Slaney*, 244 F.3d at 598. Here, Plaintiff's description of the alleged enterprise suggests a structure in which Sohail could not have directed the enterprise's affairs. The allegations in the SAC indicate that Jackson Hewitt directed the business of the franchises, and not the other way around. (R. 37, SAC ¶ 5, 50.) The fact that Sohail may have exerted control over part of the enterprise—his own franchises—is not sufficient: "Simple exertion of control over one aspect of an enterprise's activities does not evince control over the enterprise itself." *Slaney*, 244 F.3d at 598. To the extent Plaintiff is claiming that Smart Tax and Ask Tax are also RICO persons, this claim fails for the same reason:

20

there is nothing in the SAC to suggest that the franchises "directed" the affairs of Jackson Hewitt. *Fitzgerald*, 116 F.3d at 227 (subsidiary must participate in control of parent in order to be deemed a RICO "person" conducting the affairs of the parent).

For all of these reasons, Plaintiff's RICO claim is dismissed with prejudice. Because the claim has been dismissed, the Court does not reach Defendants' alternative arguments for dismissal of this claim.

### C.    Unjust Enrichment

In Count III, Plaintiff raises a state law claim for unjust enrichment, asserting that "Defendants have been and continue to be unjustly enriched through their receipt and retention of payments for its Gold Guarantee which they refuse to honor." (R. 37, SAC ¶ 61.) Plaintiff further alleges that "[a]llowing Defendants to retain such a benefit gained from deceiving Plaintiff and the proposed class violates the fundamental principles of justice, equity and good conscience." (*Id.* ¶ 62.) Jackson Hewitt argues that a claim for unjust enrichment "is unavailable where the claim rests on the breach of an express promise." (R. 50, Jackson Hewitt's Mem. in Supp. of Mot. to Dismiss at 12-13.)

Unjust enrichment is a "quasi-contract" theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results. *Hayes Mech., Inc. v. First Indus., LLP*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). To state a claim for unjust enrichment, the plaintiff must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). "When two parties' relationship is governed by contract, they may not bring a claim of

21

unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004). "The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Id.*

In the SAC, Plaintiff clearly alleges the existence of a contractual relationship between the parties pertaining to the subject matter of this suit, specifically, the Basic and Gold Guarantees. (R. 37, SAC ¶¶ 1, 13-16 & Ex. 1, Agreement.) Further, the alleged benefit retained by Defendants—payment for the Gold Guarantee—was conferred pursuant to the terms of a contract. (R. 37, SAC ¶ 61 ("Defendants have been and continue to be unjustly enriched through their receipt and retention of payments for its Gold Guarantee, which they refuse to honor."); R. 64, Pl.'s Combined Resp. at 19 ("Plaintiff's unjust enrichment claim arises out of the defendants' deceptive Gold Guarantee contract. . . .").) Plaintiff's claim is that Defendants retained this benefit while refusing to "honor" their obligations under the Gold Guarantee; this is in essence a breach of contract claim, and therefore, Plaintiff cannot seek relief based on a quasi-contractual theory. *Shaw*, 461 F.3d at 902 (claim for unjust enrichment "is unavailable where the claim rests on the breach of an express contract"); *see also Northern Tr. Co. v. MS. Sec. Serv., Inc.*, No. 05-3370, 2006 WL 695668, at \*13 (N.D. Ill. Mar. 15, 2006) (unjust enrichment claim unavailable where alleged benefit was conferred pursuant to terms of written contract between the parties and plaintiff alleged that "retention of the benefits was wrong because [defendant] deviated from its contractual obligations.").

To the extent Plaintiff is attempting to plead unjust enrichment in the alternative to his breach of contract claim, *see* Fed. R. Civ. P. 8(e)(2), to do so he must allege the absence of a

22

valid contract. *See Cromeens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003); *Am. Hardware Mfg. Assoc. v. Reed Elsevier, Inc.*, No. 03-9421, 2004 WL 3363844, at *16 (N.D. Ill. Dec. 28, 2004). Plaintiff does not plead the absence of a valid contract, and indeed, within the unjust enrichment claim he incorporates by reference other paragraphs in the SAC that refer to the contractual guarantees or seek to require Jackson Hewitt to honor its obligations under those guarantees. (*See* R. 37, SAC ¶ 60; *id.* ¶¶ 1, 12-16, 24.) For these reasons, Plaintiff has failed to state a claim for unjust enrichment, and accordingly, this claim is dismissed.

## D. Breach of Contract

Finally, in Count IV, Plaintiff alleges a breach of contract claim. (R. 37, SAC ¶¶ 63-66.) Specifically, Plaintiff alleges: "Defendants' sale of tax preparation services and the assurance of a basic guarantee or, the more expensive, Gold Guarantee in exchange for extra payment created a contract with Jackson Hewitt customers." (*Id.* ¶ 64.) Plaintiff further alleges that "Defendants, by failing to honor their guarantees for improperly prepared returns, have breached their contract with Jackson Hewitt tax preparation customers," causing Plaintiff and other class members to suffer damages. (*Id.* ¶¶ 65-66.)

To state a claim for breach of contract, the plaintiff must allege: the existence of a valid and enforceable contract; performance by the plaintiff; breach of contract by the defendants; and resultant injury to the plaintiff. *Catania v. Local 4250 of Comm. Workers of Amer.*, 834 N.E.2d 966, 971 (Ill. App. Ct. 2005). In interpreting the contract, the Court must look to its plain language. *Brooklyn Bagel Boys, Inc. v. Earthgrain Ref. Dough Prod., Inc.*, 212 F.3d 373, 378 (7th Cir. 2000). The meaning of the contract "must be determined from the words or language

23

used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language." *McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000).

Jackson Hewitt argues that Plaintiff fails to state a claim for breach of contract because the Gold Guarantee is unambiguous, and expressly states that it will not apply when the taxpayer "is unable to produce sufficient or appropriate tax records to support [the taxpayer's] tax position before the government." (R. 50, Jackson Hewitt's Mem. In Supp. of Mot. to Dismiss at 13.) Jackson Hewitt further argues that the Gold Guarantee was not intended to "immunize" taxpayers submitting returns that contain improper deductions, to which they have no legal entitlement in the first place. (*Id.*) This Court agrees with Jackson Hewitt that the clear language of the agreement signed by Plaintiff indicates that, under the Gold Guarantee, no taxes will be paid by Jackson Hewitt unless the taxpayer has documentation to support his tax position before the government. (R. 37, SAC ¶ 15.) "People are free to sign legal documents without reading them, but the documents are binding whether read or not." *Novitsky v. Amer. Consult. Engin., L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999). "Any other approach would undermine the validity of the written word and encourage people either to close their eyes (hoping that they can reap the benefits without incurring the costs and risks of the venture) or to come up with hard-to-refute tales of not reading or understanding the documents they sign." *Id.*

Plaintiff appears to recognize that the documentation exception defeats his claim under the Gold Guarantee, and essentially abandons this aspect of his breach of contract claim. In his response to the motion to dismiss, he characterizes the breach of contract claim as involving solely the Basic Guarantee. (R. 64, Pl.'s Combined Resp. at 19) ("Jackson Hewitt breached its

24

Basic Guarantee contract with Mr. Wooley."). In the absence of any argument from Plaintiff as to how the plain language of the documentation exception contained in the Gold Guarantee does not bar his claim, this aspect of the breach of contract claim is dismissed.

Jackson Hewitt argues that Plaintiff is not entitled to reimbursement under the Basic Guarantee either because, had he properly reviewed his income tax return, the allegedly unauthorized deductions would have been "hard to miss." (R. 50, Jackson Hewitt's Mem. in Supp. of Mot. to Dismiss at 14 n. 3.) However, this argument requires the Court to presume certain facts not contained in the SAC, including that the deductions contained in Plaintiff's return were so sizable that he should have noticed them. At this stage, the Court must accept Plaintiff's allegations as true. He alleges that he paid Jackson Hewitt to prepare his taxes, and that the Jackson Hewitt tax preparer, Neal, concocted false deductions without his knowledge or input, preparing a tax return on his behalf that did not reflect the information he had given her. (R. 37, SAC ¶¶ 1, 4, 20, 21.) He further alleges that he signed and submitted the tax return presuming that Neal had prepared it accurately.[4] (*Id.* ¶ 21.) Plaintiff further alleges that Neal's errors resulted in him being charged penalties and interests by the IRS, and that despite Neal's preparation of an erroneous return, Jackson Hewitt will not reimburse him in accordance with the Basic Guarantee. (*Id.* ¶¶ 21-23; R. 64, Pl.'s Combined Resp. at 20.) In short, Plaintiff has

---

[4] Jackson Hewitt is correct that under the tax laws a taxpayer remains legally responsible for his own taxes and cannot escape liability by blaming his tax preparer for an erroneous return. *See Allen v. Comm'r of Intern. Rev.*, 128 T.C. 37, 41 (T.C. 2007). This does not mean, however, that the taxpayer cannot not state a breach of contract claim against his tax preparer for the preparation of an erroneous or inaccurate return. *See generally Peterson v. H&R Block Tax Services, Inc.*, 971 F. Supp. 1204 (N.D. Ill. 1997) (denying motion to dismiss Illinois breach of contract claim premised on tax preparer's provision of erroneous tax advice); *Dail v. Adamson*, 570 N.E.2d 1167 (Ill. App. Ct. 1991) (taxpayer whose sales tax returns were improperly prepared by accountant was entitled to damages in action based on negligence and breach of contract).

25

adequately stated a claim for breach of contract as to Jackson Hewitt's failure to reimburse him for penalties and interest under the Basic Guarantee.

As a final matter, Sohail, Ask Tax, and Smart Tax argue that Sohail cannot be held liable because he was "merely a silent minority shareholder" who did not have any personal involvement in the events underlying this suit. (R. 59, Ask Tax's Mem. in Supp. of Mot. to Dismiss at 3.) In support of this argument, Ask Tax attaches to its motion an affidavit from Daoud Khatib, an Ask Tax shareholder, who attests that "Sohail never operated, managed, supervised, or directed any form of business operations of Ask Tax." (*Id.*, Ex. 1, Khatib Aff. ¶ 4.) There is no basis for the Court to consider this document, which falls outside the pleadings and is not a public record or similar document that may be judicially noticed, in deciding a motion to dismiss under Rule 12(b)(6). At this stage, the Court must accept Plaintiff's allegations as true. Plaintiff alleges that Sohail owned and controlled numerous Jackson Hewitt franchises in the Chicago area, including the store that prepared his taxes.[5] (R. 37, SAC ¶¶ 17-19.) Plaintiff further alleges that Sohail's stores prepared numerous false tax returns and failed to reimburse taxpayers in accordance with their written agreements. (*Id.* ¶¶ 25-26.) The Court finds enough in the SAC to prevent dismissal of Sohail as a Defendant.

___

[5] Although in certain instances Plaintiff pleads on the basis of "information and belief," the Court finds these allegations sufficient at this stage since the exact ownership structure of the various stores is not a matter that would be within Plaintiff's personal knowledge. "Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005).

## CONCLUSION

For the above reasons, Defendant Jackson Hewitt's Motion to Dismiss (R. 49) is granted in part and denied in part; Defendants Farrukh Sohail's and Smart Tax, Inc.'s Motion to Dismiss (R. 51) is granted in part and denied in part; and Defendant Ask Tax, Inc.'s Motion to Dismiss (R. 59) is granted in part and denied in part. Counts I, II and III of the Second Amended Complaint are dismissed with prejudice.

In light of this opinion, the Court has serious doubts about the propriety of class certification and federal jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d). Given that the scope of the litigation has been significantly altered by this opinion, the remaining viable count is dismissed without prejudice to being repled in an amended federal complaint or, if appropriate, in state court. Any amended federal complaint must be filed on or before **April 25, 2008**. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case.

ENTERED:

**Ruben Castillo**
**United States District Judge**

Dated: March 25, 2008

27