UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENT WOOLEY and SIMPSON VARKEY, for themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | 07 C 2201 |
| vs. | ) ) | Judge Feinerman |
| JACKSON HEWITT INC., a wholly owned subsidiary of Jackson Hewitt Tax Services Inc.; FARRUKH SOHAIL, SMART TAX, INC. d/b/a Jackson Hewitt Tax Service; ASK TAX, INC. d/b/a Jackson Hewitt Tax Service; SMART TAX OF NORTH CAROLINA, INC. d/b/a Jackson Hewitt Tax Service; SMART TAX OF GEORGIA, INC. d/b/a Jackson Hewitt Tax Service; and SOFAR, INC. d/b/a Jackson Hewitt Tax Service, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Brent Wooley and Simpson Varkey brought this putative class action against Jackson Hewitt, Inc., Farrukh Sohail, Smart Tax, Inc., Ask Tax, Inc., Smart Tax of North Carolina, Inc., Smart Tax of Georgia, Inc., and Sofar, Inc., alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and Illinois statutory and common law. The court dismissed the RICO, state statutory consumer fraud, and unjust enrichment claims with prejudice under Rule 12(b)(6), but allowed Plaintiffs to proceed with a contract claim. 540 F. Supp. 2d 964 (N.D. Ill. 2008) (Castillo, J.). Plaintiffs sought and were allowed leave to file a fourth amended complaint, which purported to state claims for common law fraud, unconscionability, and breach of contract. Doc. 100. The court dismissed the fraud and unconscionability claims with prejudice under Rule 12(b)(6), but again allowed the

contract claim to proceed. Docs. 120-121 (Castillo, J.). During the class discovery period, the court allowed Plaintiffs leave to file a fifth amended complaint, Doc. 178 (Castillo, J.), which states a single contract claim alleging that Defendants breached the Jackson Hewitt "Basic Guarantee." Doc. 188.

After class discovery closed, Plaintiffs moved for class certification. Doc. 198. Defendants Sohail, Smart Tax, and Jackson Hewitt responded. Docs. 206, 208. Plaintiffs filed a reply. Doc. 211. Defendant Ask Tax, which initially appeared (Doc. 55) but then defaulted (Doc. 151), did not respond. Defendants Smart Tax of North Carolina, Inc., Smart Tax of Georgia, Inc., and Sofar, Inc. not having been served with summons and not having appeared, did not respond. The motion is fully briefed and ready for disposition.

**Background**

The relevant facts were set forth in the first Rule 12(b)(6) ruling, *see* 540 F. Supp. 2d at 967-69, and will be restated here to the extent relevant to class certification. Defendant Jackson Hewitt provides tax preparation services through both company-owned offices and independently owned and operated franchise offices, all doing business under the brand name Jackson Hewitt Tax Services. During the 2002-2005 tax years, which encompass the putative class period, Defendant Farrukh Sohail held ownership interests in several Jackson Hewitt franchise offices, including offices owned by Defendants Smart Tax, Inc., and Ask Tax, Inc., which operated in Illinois; Defendant Smart Tax of North Carolina, Inc., which operated in North Carolina; Defendant Smart Tax of Georgia, Inc., which operated in Georgia; and Defendant Sofar, Inc., which operated in Michigan.

The complaint alleges that tax forms prepared at the Sohail franchises commonly contained five misrepresentations: (1) incorrect W-2 forms; (2) false filing statuses, such as

having married couples file separate returns, which allowed each filer to claim to be single or a head of household; (3) misstatements regarding the number of dependents; (4) false earned income tax credit claims; and (5) false Schedule A deductions and Schedule C expenses. These allegations may or may not be correct, but they are not fanciful. In 2007, the federal government sued Sohail and the Illinois, Georgia, and North Carolina entities for tax fraud in the Northern District of Illinois, the Northern District of Georgia, and the Eastern District of North Carolina. Doc. 198-3. In the Georgia case, the government's disclosures stated that 51% of randomly-selected returns from the Georgia franchises contained errors, which led it to believe that 51% of the franchises' 24,000 total returns also contained errors. Doc. 198-4 at 42. In the North Carolina case, the government's disclosures stated that 20% of randomly-selected returns from the North Carolina franchises contained errors, which led it to believe that 20% of the franchises' 21,000 returns contained errors. Doc. 198-5 at 5. In the Illinois case, the government's disclosures stated that 60% of randomly-selected returns from the Illinois franchises contained errors, but did not indicate the total number of returns prepared by those franchises. Doc. 198-5 at 11. Although the government assigned much blame to the Sohail companies, it also recognized that customers often were at fault as well; the government alleged, for example, that "[m]any Smart Tax customers illegally claim purported dependents whose social security numbers they have purchased or 'borrowed' from friends or other customers or Smart Tax/Jackson Hewitt," and that some Sohail tax preparers "have sold or sell social security numbers to customers to use in this fraudulent manner." Doc. 198-3 at 16. The cases settled, with Sohail admitting no liability but paying a substantial sum to the government and agreeing to sell back his franchises to Jackson Hewitt.

Plaintiffs Wooley and Varkey had their 2002 and 2003 tax returns prepared at a Smart Tax franchise in Illinois. Each return was prepared by Toya Neal, a colleague of Plaintiffs' at the U.S. Postal Service facility at O'Hare Airport who moonlighted as a tax preparer. Neal had previously worked at H&R Block, where she prepared Wooley's returns for the 1999-2001 tax years. Wooley and Varkey patronized Smart Tax for the 2002 and 2003 tax years because Neal worked there.

The IRS audited Wooley's and Varkey's 2002 and 2003 returns, found that each contained unsubstantiated charitable deductions and other misrepresentations, and assessed additional taxes, interest, and penalties. Plaintiffs maintain that they did not authorize the deductions and misrepresentations, while Defendants say that Plaintiffs provided Neal with the false information and/or were equal participants in any wrongdoing. Prior to the returns being filed with the IRS, Plaintiffs signed declarations on the returns stating, "Under penalty of perjury, I declare that I have examined a copy of this tax return … to the best of my knowledge and belief, it is true, correct, and complete." Doc. 208-6 at 3; Doc. 208-8 at 3.

By virtue of having engaged the services of a Jackson Hewitt franchise, Plaintiffs were covered by Jackson Hewitt's "Basic Guarantee," which provides:

> Jackson Hewitt has a unique ProFiler® tax preparation software, a computerized error checker, and training procedures designed to minimize the chance of an error in your tax return. However, if Jackson Hewitt makes an error in your tax preparation, although Jackson Hewitt does not pay any additional tax assessed, Jackson Hewitt will reimburse you for any penalty or interest, which you must pay on such tax. Further, if your tax return is audited, Jackson Hewitt will appear with you at the audit. Although Jackson Hewitt cannot act as your legal counsel or representative, Jackson Hewitt can explain how your return was prepared.

Doc. 188 at ¶ 17. Minor changes to the Basic Guarantee were made in the 2004 tax year, clarifying that "if *a* Jackson Hewitt *tax preparer*" makes an error, "*the* Jackson Hewitt *office*" in

question will reimburse the resulting fees or penalties. Doc. 198-2 at 20 (changes emphasized).

Prior to filing this action, neither Plaintiff demanded reimbursement under the Basic Guarantee for the penalties and interest they paid for the 2002 and 2003 tax years.

The complaint's sole surviving claim is that Defendants breached the Basic Guarantee by failing to reimburse Plaintiffs for interest and penalties assessed by the IRS. Their class certification motion defines the proposed class as follows:

> All "persons" (a) who purchased Jackson Hewitt tax preparation services at a Sohail Group-owned Jackson Hewitt office, (b) who were assessed additional taxes, interest or penalties on the Jackson-Hewitt prepared tax filing based on one of the five preparer-initiated errors detailed in the U.S. Government's complaints against the Sohail Group, (c) where Jackson Hewitt did not reimburse the customer for any penalty or interest the customer paid on such tax; for the tax years 2002 to 2005.

Doc. 198 at 1-2. The motion also proposes what Plaintiffs call an "Alternative Class Definition":

> Those "persons" (a) who purchased Jackson Hewitt tax preparation services at a Sohail Group-owned Jackson Hewitt office, (b) who were assessed additional taxes, interest or penalties on their Jackson-Hewitt prepared tax filings, (c) where Jackson Hewitt did not reimburse the customer for any penalty or interest customer paid on such tax; for the tax years 2002 to 2005.

*Id*. at 2.

## Discussion

To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the

proposed class must fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). In addition, the class must be "identifiable as a class," meaning that the "class definition must be definite enough that the class can be ascertained." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained[,] … the boundary between a class determination and the merits may not always be easily discernible," and "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Retired Chicago Police*, 7 F.3d at 598-99 (internal quotation marks omitted). As the Seventh Circuit recently reiterated, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport*

*Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011). The Seventh Circuit has directed district courts to exercise "caution" in deciding whether to certify a class. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

Before proceeding, Plaintiffs' proposed "Alternative Class Definition" will be addressed. The alternative class consists of individuals who were not reimbursed under the Basic Guarantee for penalties and interest assessed on tax filings prepared by a Sohail franchise. That class definition is plainly inappropriate, for it does not require that interest and penalties have been assessed due to an error made by Jackson Hewitt or a Jackson Hewitt tax preparer—even though the Basic Guarantee limits a customer's reimbursement right to those circumstances. *See* Doc. 121 at 10 (in denying Rule 12(b)(6) motion to dismiss contract claim, court explains that "[w]hether Defendants actually breached the contract by concocting false deductions—or whether the deductions were based on false information provided by Plaintiff—is a matter that must be decided at later stages of this litigation"). A proposed class definition that fails to account for this fundamental component of the contract claim cannot proceed under Rule 23. *See Kohen v. Pac. Invest. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("if the [class] definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad"); *Oshana*, 472 F.3d at 513-14 (class certification properly denied where proposed class not limited to those who had actual claims against defendant); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (class certification properly denied where "it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief").

Plaintiffs' principal and narrower proposed class does not suffer from this infirmity, for it requires that interest and penalties have been assessed due to "one of the five preparer-initiated errors" set forth above. That class, however, suffers from at least four other infirmities: failure to define an ascertainable class, and failure to satisfy Rules 23(a)(1), 23(a)(4), and 23(b). Each infirmity independently requires that class certification be denied.

**I.      Definiteness and Ascertainability**

As noted above, a class definition "must be definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513; *see also* 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760, at 139-40 (3d ed. 2005) ("the requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"). Class membership must be ascertainable through "objective criteria," *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007), with the determination made through "ministerial review" rather than "arduous individual inquiry," *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 370 (N.D. Ill. 2008). *See Manual for Complex Litigation* § 21.222, at 270 (4th ed. 2004) ("An identifiable class exists if its members can be ascertained by reference to objective criteria."); *Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 443 (S.D. Iowa 2009) ("The Court should not have to engage in lengthy, individualized inquiries in order to identify members of the class.") (citing *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981)). Moreover, "[a]lthough the identify of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable" because "individual class members must receive the best notice practicable and have an opportunity to opt out." *Manual for Complex Litigation* § 21.222, at 270 (class definition "must be precise, objective, and *presently* ascertainable")

(emphasis added); *see also Adashunas*, 626 F.2d at 603-04; *Jimenez v. Weinberger*, 523 F.2d 689, 698 n.17 (7th Cir. 1975) (Stevens, J.) ("The 1966 amendments [to Rule 23] were designed, in part, specifically … to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.") (internal quotation marks omitted).

Plaintiffs contend that determining whether any given customer is part of the proposed class requires examination only of whether the customer was assessed interest or penalties due to one of the five errors noted above. That is wrong, for the class—as it has been defined by Plaintiffs themselves—encompasses not *all* customers who paid interest or penalties, but only those customers whom the IRS assessed due to errors that were "preparer-initiated." This is not an insignificant distinction. For example, if a customer is assessed interest and penalties because her return claimed eight dependents when she had only two, the error would not be "preparer-initiated" if the customer knowingly or intentionally provided the tax preparer with false information and documents regarding the size of her family. Such a customer, not having been assessed due to an error that was "initiated" by the "preparer," is not a member of the class.

This limitation on the class would not render the class unascertainable if a clear and accessible paper or electronic record revealed whether a customer provided incorrect information or whether, by contrast, the tax preparer botched the return (either accidentally or intentionally) despite having been provided accurate information. *See Seary v. eFunds Corp.*, 2010 WL 183362, at *7 (N.D. Ill. Jan. 20, 2010) ("Membership in the Bad Check List class can be assessed by using solely objective criteria including whether the putative class member requested a Disclosure Report during the relevant time period and whether his or her consumer identifiers appeared on the SCAN database at any time during the year prior to their request."),

*reconsidered on other grounds by Seary v. eFunds Corp.*, 2010 WL 1337684 (N.D. Ill. Mar. 31, 2010); *Ramirez*, 250 F.R.D. at 370 (class ascertainable where determining class membership involves only "whether a written contract—signed by both the original creditor and the putative debtor—was attached to the underlying collection complaint"); *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008) ("the classes are ascertainable based on objectively identifiable criteria, namely, according to the date of the final statement of account as given in the affidavits attached to the state court complaints"). But Plaintiffs offer no basis to conclude that there exists such a paper or electronic record in this case. To the contrary, Plaintiffs tendered a declaration from a Sohail customer averring that she conveyed information orally to the tax preparer, that the tax preparer input the information on a computer, and that any original paperwork was given back to the customer. Doc. 198-5 at 13-16.

Ascertaining whether the errors on that customer's return were "preparer-initiated," and thus whether she is part of the class, would require determining whether the tax preparer accurately recorded the information the customer conveyed. That determination, in turn, would turn not on a clear and accessible record, but on the fading, possibly conflicting, and perhaps nonexistent memories of the customer and her tax preparer. The same holds for most, if not all, Sohail customers assessed penalties and interest during the class period. Accordingly, Plaintiff has not demonstrated that class membership is ascertainable based on a "ministerial review" of available records, as opposed to an "arduous individual inquiry" into the circumstances of most or all potential class members. *Ramirez*, 250 F.R.D. at 370. It follows that the class should not be certified. *See Oshana*, 472 F.3d at 513-14; *Simer*, 661 F.2d at 669-71; *Wallace v. Chicago Housing Auth.*, 224 F.R.D. 420, 426 (N.D. Ill. 2004).

## II. Rule 23(a)

Even if the proposed class were definite and ascertainable, Plaintiffs fail to meet two requirements under Rule 23(a), numerosity and adequacy.

### A. Rule 23(a)(1): Numerosity

A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court "is entitled to make common sense assumptions in order to support a finding of numerosity." *Peterson v. H&R Block Tax Servs., Inc.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997). However, "the party supporting the class cannot rely on mere speculation or conclusory allegations as to the size of the putative class … for numerosity purposes." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (internal quotation marks omitted); *see also Roman v. First Franklin Fin. Corp.*, 2001 WL 322563, at *2 (N.D. Ill. Mar. 3, 2001) ("the impracticability of joinder must be positively shown and not merely speculative").

Plaintiffs contend that applying common sense assumptions to the facts allegedly adduced during the government's investigation of Sohail and his franchises yields the conclusion that there are "hundreds, if not thousands" of class members. Plaintiffs' starting point is that the tax returns of 16,440 Sohail customers during the class period contained errors; Plaintiffs derived this figure from the government's assumption that 51% of the 24,000 returns prepared by the Georgia franchises and 20% of the 21,000 returns prepared by the North Carolina franchises had errors. Doc. 211 at 35 ("Even excluding the tax returns prepared by the Smart Tax branch in Illinois, this amounts to at least 16,440 potential claimants."). Even if this starting point were accepted, Plaintiffs' contention that there are "hundreds, if not thousands" of class members still would be entirely speculative.

The class can include only those customers with a potential claim under the Basic Guarantee. *See Kohen*, 571 F.3d at 677; *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *Adashunas*, 626 F.2d at 604. To have a potential claim, the customer must have been assessed interest and penalties, and to have been assessed interest and penalties, the customer must have been audited. Audits are rare for all but the highest earners; in 2002, 2003, 2004, and 2005, the IRS audited 0.57%, 0.63%, 0.77%, and 0.93% of all income tax returns, respectively. *See* U.S. Dep't of Treasury, IRS Data Book 2005, at 28 (available at http://www.irs.gov/pub/irs-soi/05databk.pdf); U.S. Dep't of Treasury, IRS Data Book 2004, at 26 (available at http://www.irs.gov/pub/irs-soi/04databk.pdf); U.S. Dep't of Treasury, IRS Data Book 2003, at 18 (available at http://www.irs.gov/pub/irs-soi/03databk.pdf); U.S. Dep't of Treasury, IRS Data Book 2002, at 19 (available at http://www.irs.gov/pub/irs-soi/02databk.pdf). The record does not reveal how the audit rate for Sohail customers compared to the norm; the court generously (to Plaintiffs) will assume a one percent rate, which would reduce the pool of potential class members from 16,440 to about 165. The court will assume, again generously, that the audits caught the errors made on the returns of all 165 customers, that interest and penalties were assessed on all 165 customers, and that all 165 customers actually paid the interest and penalties.

A potential class of 165 members can, and likely would, satisfy Rule 23(a)(1). *See Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 981 (7th Cir. 2011); *Thompson v. City of Chicago*, 2002 WL 1303138, at *3 (N.D. Ill. June 12, 2002). But the analysis cannot stop there, for an audited Sohail customer has a potential claim for breach of the Basic Guarantee only if two other events occurred: the customer requested reimbursement, and the request was denied. After extensive discovery, Plaintiffs have not identified any Sohail customer whose request for reimbursement under the Basic Guarantee was turned down. Plaintiffs themselves did not claim

reimbursement under the Basic Guarantee until after this litigation commenced—and even then, Varkey's request was tendered by class counsel, Defendants actually offered to reimburse Varkey, and Varkey turned down the offer. Doc. 207-12; Doc. 208 at 12; Doc. 208-9; Doc. 211 at 33-35. Plaintiffs' failure to specifically identify additional class members does not necessarily defeat numerosity, though it hardly advances their cause. *See Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 147 (N.D. Ill. 2010). The fatal blow to numerosity, rather, is that Plaintiffs have provided no basis, either in the record or in common sense assumptions, to estimate either the proportion of audited Sohail customers who requested reimbursement under the Basic Guarantee or the proportion of those customers whose requests were denied. Without those predicates, and regardless of whether Plaintiffs' starting point was 16,440 customers or some reasonable multiple thereof, Plaintiffs cannot provide a reasonable estimate of the size of the class, and therefore cannot satisfy Rule 23(a)(1). *See Marcial*, 880 F.2d at 957 (rejecting class certification for lack of numerosity where "plaintiffs have only speculated as to the number of persons who may have legitimate claims").

**B.     Adequacy – Rule 23(a)(4)**

Two recent decisions from the Seventh Circuit emphasize that a proposed class representative is inadequate under Rule 23(a)(4) if she is subject to a defense not applicable to the class as a whole:

> The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer. A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative.

-13-

*CE Design Ltd. v. King Architectural Metals, Inc.*, __ F.3d __, 2011 WL 938900, at *4 (7th Cir. Mar. 18, 2011) (citations and internal quotation marks omitted); *see also Randall v. Rolls-Royce Corp.*, __ F.3d __, 2011 WL 1163882, at *5 (7th Cir. Mar. 30, 2011); *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974). This obstacle to class certification occasionally has been addressed under Rule 23(a)(3), which concerns typicality, but one of the Seventh Circuit's recent decisions makes clear that adequacy is the proper rubric. *See CE Design*, 2011 WL 938900, at *3.

Defendants contend that Wooley and Varkey are subject to several unique defenses, among them being *in pari delicto*. Like the unclean hands defense in a case at equity, the *in pari delicto* defense prohibits a plaintiff from recovering damages in an action at law "if his fault was equal to the defendant's." *Byron v. Clay*, 867 F.2d 1049, 1052 (7th Cir. 1989); *see also King v. First Cap. Fin. Servs. Corp.*, 828 N.E.2d 1155, 1173 (Ill. 2005) ("The doctrine of *in pari delicto* embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.") (internal quotation marks omitted); *Eastern Trading Co. v. Refco, Inc.*, 1998 WL 831834, at *9 (N.D. Ill. Nov. 25, 1998) ("Under the *in pari delicto* doctrine, courts will not enforce a contract in favor of a party that has engaged in wrongdoing, but instead will leave the parties as they are."). The defense "is intended for situations in which the victim is a participant in the misconduct giving rise to his claim." *Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004).

Defendants have adduced substantial evidence indicating that Wooley and Varkey were willing and equal participants in the misconduct leading to their filing of incorrect tax returns for the 2002-2003 tax years. Wooley went to great lengths to have a specific tax preparer, Toya Neal, prepare his returns. Wooley patronized Neal prior to 2002, when she worked at H&R

Block, a competitor of Jackson Hewitt. Wooley's 2000 and 2001 returns claimed extremely high deductions that strain credulity; due to confidentiality concerns expressed by class counsel, the actual figures are not set forth here. Wooley went back to H&R Block to have his 2002 return prepared, only to find that Neal no longer worked there. Another H&R Block tax preparer estimated that Wooley could receive a particular refund; dissatisfied, Wooley drove to the Jackson Hewitt location where Neal had moved, bypassing numerous tax preparers in closer proximity, and obtained a larger refund. Much like the 2000 and 2001 returns prepared at H&R Block, Wooley's 2002 return claimed suspiciously high deductions, as did his 2003 return, also prepared by Neal. Wooley used a different tax preparer for his 2004 return. That return reported an extremely high deduction for unreimbursed employee expenses; according to Wooley, that deduction was entirely the new tax preparer's doing, just as the incorrect deductions on the 2002 and 2003 returns were entirely Neal's doing.

Varkey testified that he did not recall who prepared his returns before the 2002 tax year, though he allowed that it might have been Neal, his and Wooley's Postal Service colleague. Like Wooley, Varkey went to great lengths, and traveled great distances, to have Neal prepare his 2002-2003 returns. Those returns claimed suspiciously high deductions, which Varkey says that Neal fabricated on her own. Varkey claimed at his deposition that he did not review his returns before signing them, but in signing the returns, he declared under "penalty of perjury" that he had "examined a copy of this tax return" and that "to the best of my knowledge and belief, it is true, correct, and complete." Doc. 208-8 at 3.

In sum, even assuming that the errors on Wooley's and Varkey's 2002 and 2003 tax returns were "preparer-initiated" within the meaning of the Basic Guarantee—because Defendants willfully prepared false tax returns or, as class counsel believes the Basic Guarantee

-15-

could be read, because Defendants "failed to catch" the incorrect information provided by Plaintiffs, Doc. 211 at 13—there is ample evidence that both Plaintiffs were sophisticated, willing, and at least equal participants in the misconduct leading to the assessment of interest and penalties. All this is not to say that Defendants' *in pari delicto* defense against Wooley and Varkey is a sure winner. But the defense is eminently colorable, which is all that Defendants need to show to defeat adequacy under Rule 23(a)(4), for "even an arguable defense" renders inadequate a proposed class representative. *CE Design*, 2011 WL 938900, at *4.

### III. Rule 23(b)

Even if Plaintiffs' proposed class was ascertainable, and even if it satisfied Rule 23(a), class certification nonetheless would founder under Rule 23(b).

#### A. Rule 23(b)(2)

Rule 23(b)(2) provides that class certification is available if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs contend that certification may proceed under Rule 23(b)(2) because they seek injunctive and declaratory relief, because any monetary relief arises from their demand to be "made whole," and because each class member's damages are "incidental" in the sense of not requiring individual calculation. Doc. 198-2 at 25-26; Doc. 211 at 47.

Plaintiffs' invocation of Rule 23(b)(2) is an obvious and futile afterthought. The complaint's prayer for relief does not mention injunctive or declaratory relief; it asks for certification under Rule 23(b)(3), not Rule 23(b)(2), and for a judgment "awarding Plaintiffs and the Class the penalties and interest assessed by the IRS." Doc. 188 at 17. The prayer also asks for "such other legal or equitable relief as the Court deems just and proper," *ibid*., but requests

like that are rote and essentially meaningless. In any event, the Seventh Circuit recently clarified that Rule 23(b)(2) extends not to "*any* kind of equitable relief," but only to "final injunctive relief or corresponding declaratory relief." *Randall*, 2011 WL 1163882, at *6 (emphasis added). The complaint does not demand final injunctive relief or corresponding declaratory relief, and it is doubtful that Plaintiffs could obtain injunctive relief anyway, as the harm they allegedly suffered from Defendants' breach of contract is classically compensable with money. *See Kartman*, 634 F.3d at 892 (injunctive relief unavailable where plaintiffs' "injury—the underpayment of their insurance claims—is easily remedied by an award of money damages, a fully adequate remedy"). Because the primary relief sought on behalf of the class—indeed, the only real relief sought—is money damages, certification is not available under Rule 23(b)(2), but must be pursued under Rule 23(b)(3). *See id.* at 895; *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580-81 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999); Advisory Comm. Note to Fed. R. Civ. P. 23 (1966) (Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages").

**B.     Rule 23(b)(3)**

A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It will be assumed for present purposes that Plaintiffs' proposed class definition—all persons "(a) who purchased Jackson Hewitt tax preparation services at a Sohail Group-owned Jackson Hewitt office, (b) who were assessed additional taxes, interest or penalties … based on one of the five preparer-initiated errors …, (c) where Jackson

Hewitt did not reimburse the customer for any penalty or interest the customer paid on such tax"—is sufficiently ascertainable. Still, to prevail on a claim for breach of the Basic Guarantee, each class member would have to prove that Jackson Hewitt "ma[de] an error" on her return. For the reasons articulated in Section I, *supra*, those determinations would entail intensive and difficult individual inquiries—many, if not most, involving swearing contests over events occurring in the earlier half of the last decade—into whether the customer or the tax preparer bore responsibility for the error. Certification under Rule 23(b)(3) "is not appropriate for resolving such highly individualized questions of fact." *Kartman*, 634 F.3d at 891; *see also Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) ("when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment").

Plaintiffs respond that those individual inquiries are unnecessary; they reason that the Basic Guarantee makes Defendants liable for *any* errors on a customer's return, even those errors resulting from the customer's provision of "incorrect or unsupportable information," because Defendants, who are tax experts, bear responsibility for catching their customers' errors. Doc. 211 at 13. That interpretation of the phrase "ma[ke] an error" in the Basic Guarantee is difficult to reconcile with the view of the contract that Plaintiffs articulated in successfully opposing dismissal of their contract claim:

> Whether Wooley "reviewed" the [tax return] is irrelevant. What is relevant is whether he understood the filing. This factual determination will only be proven by deposing Mr. Wooley to learn what he understood about the return and deposing Ms. Neal to learn what she told Mr. Wooley.

Doc. 111-2 at 14. If, as Plaintiffs now contend, Defendants are automatically liable for any error on a customer's tax return, even errors resulting from her intentional submission of false

information or documents to the tax preparer, why would it be "relevant" to depose Wooley to "learn what he understood about the return" and to depose Neal "to learn what she told" Wooley? Finally, if the Basic Guarantee is correctly read to protect customers from the consequences of their own intentional tax fraud, the contact might be void as a matter of Illinois public policy, which likely prohibits insuring against penalties assessed for violating tax laws. *See Mortenson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 249 F.3d 667, 672 (7th Cir. 2001).

In any event, even if Plaintiffs' new interpretation were correct and did not render the Basic Guarantee void under Illinois law, numerous class members still would be subject to an *in pari delicto* defense. *See* Doc. 198-3 at 7 (in the civil tax fraud case, government alleged that "[r]epeat customers seek out individual Smart Tax/Jackson Hewitt return preparers who have fraudulently obtained refunds for them in the past," and that "[m]any of Smart Tax/Jackson Hewitt's return preparers knowingly turn a blind eye to the customers' schemes, and to the customers' suspicious or fraudulent information"). That defense turns on questions of individual responsibility that cannot be resolved on a classwide basis and that would overwhelm any efficiencies gained by trying common issues in a class proceeding. *See Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005) (predominance not satisfied where "affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery"), *aff'd*, 256 Fed. Appx. 818 (7th Cir. 2007); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("while it is well established that the existence of a defense potentially implicating different class members differently does not *necessarily* defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement") (citation omitted).

**Conclusion**

Earlier in this case, on dismissing all of Plaintiffs' claims except the contract claim, Judge Castillo expressed "serious doubts about the propriety of class certification." 540 F. Supp. 2d at 981. Those doubts were well-founded. For each of the foregoing reasons, Plaintiffs' motion for class certification is denied.

April 25, 2011

_____
United States District Judge